UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DON M. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-0077-TAB-RLY |
| | ) | |
| LAWRENCE KADISH, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

**I.      Introduction.**

Plaintiff Don M. Knight, an Indiana citizen, brought this diversity action against Defendant Lawrence Kadish, a New York citizen, after the parties entered a purchase agreement for property in New Castle, Indiana in 2003. Plaintiff alleges that title defects resulted in Defendant's inability to convey marketable title and that Defendant refuses to either cure the defects or return Plaintiff's earnest money. Plaintiff now moves for partial summary judgment contending that as a matter of law no enforceable contract exists and he is entitled to the return of his earnest money. [Docket Nos. 68, 71.] Defendant opposes this motion and in response moves for summary judgment seeking specific performance of the real estate purchase agreement. [Document No. 73.] For the reasons below, the Court denies both motions.

**II.     Summary judgment standard.**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This standard is the same when parties file cross-motions for summary judgment.  *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005).  With cross-motions, the Court construes all inferences "in favor of the party against whom the motion under consideration is made."  *Id.*, quoting *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (internal quotation omitted).

**III.    Background.[1]**

In 1979, Defendant entered into a lease agreement with Daniel J. DeMuth allowing DeMuth to lease and occupy real estate at 1480 South Memorial Drive, in New Castle to operate a Captain D's Seafood Restaurant under a franchise agreement with Shoney's Inc. [Plf.'s Aff. at ¶ 4, Ex. 3.]  Per the 1979 agreement, Shoney's, Inc. was a guarantor of DeMuth's obligations under the lease.  [Plf.'s Aff. at ¶ 4, Ex. 3.]  When DeMuth abandoned his franchise restaurant in 1981 or 1982, he entered into an assignment, which authorized Shoney's to take DeMuth's place on the DeMuth lease.  [Daniel J. DeMuth Dep. at pp. 39-40, 57-58, Ex. 3-4.]  On June 20, 1990, Plaintiff's corporation, Knight Enterprise, Inc., entered a sublease agreement with Shoney's, to operate the same Captain D's restaurant.  [Plf.'s Aff. at ¶ 2, Ex. 1.]  Shoney's represented to Plaintiff that Shoney's had "assumed the position of lessee under the Lease," when it entered into the sublease agreement with Knight Enterprise.  [Plf.'s Aff. at ¶ 6.]

Monthly, Plaintiff paid Shoney's for his franchise obligation and for the sublease rent paid to Defendant.  [Charles F. Braddock Dep. at p. 81.]  Neither Plaintiff, nor his attorney,

---

[1] These facts are as proffered by Plaintiff and largely admitted by Defendant.  To the extent that any disputed facts are material, the Court has construed them consistent with the standard for cross-motions for summary judgment.

2

Charles F. Braddock, had seen a copy of the 1979 DeMuth lease before Plaintiff signed the sublease with Shoney's, nor did Plaintiff know the 1979 DeMuth Lease terms or have any reason to doubt Shoney's representation that it was the lessee having full legal authority to assume the position of DeMuth as lessee and to subsequently sublease the real estate to Knight Enterprise. [Braddock Dep. at p. 88.]

In 2002, Plaintiff decided to buy the real estate, intending to merge the subleasehold into the fee estate, leaving Plaintiff with the obligation to pay installments on a Small Business Administration ("SBA") loan he would obtain to purchase the real estate and to extinguish any obligation to continue to pay rent under the sublease. [Plf.'s Aff. at ¶ 8; Braddock Dep. at pp. 7, 25.] Plaintiff believed that he was buying the leases against the real estate by buying the real estate, and that he would no longer have to lease it. [Plf.'s Aff. at ¶ 11.] Throughout negotiations with Defendant, Plaintiff expressed to Defendant that he wanted to buy the property without the lease. [Braddock Dep. at p. 94.] In fact, the SBA would not finance the real estate purchase without removal of all leases from the title. [Braddock Dep. at pp. 38-49.]

On January 13, 2003, Plaintiff's counsel drafted a purchase agreement containing Plaintiff's desired terms and Plaintiff sent this proposed draft to Defendant's attorney, Irwin Reicher, for approval. [Plf.'s Aff. at ¶ 10, Ex. 5; Braddock Dep. at pp. 84, 93.] In this initial draft, Plaintiff proposed the following language: "Existing leases and assignable insurance policies, if any, shall then be assigned to purchaser." [Plf.'s Aff. at Ex. 5, ¶ 11.] Later in January, Defendant's counsel returned Defendant's counter proposal to Plaintiff with added black-lined language:

> Seller's Title. [LAWRENCE] KADISH ("Seller") agrees to sell the real estate and the property described above, if any, at the price and terms set

3

> forth herein and to convey, or cause to be conveyed to Purchaser, title thereto by a recordable [Special] Warranty Deed and subject only to: (a) covenants, conditions and restrictions of record; (b) private, public and utility easements and roads and highways, if any; (c) zoning regulations and ordinances of the city, town or village in which the Property lies; (d) any encroachments by adjoining properties on the Property; (e) any encroachments by the Property on other properties, provided title company will insure said encroachments may remain; (f) any liens or other title defects caused by the act or failure by Tenant under the sublease made by Shoney's Inc., as Landlord, and Knight Enterprises, Inc., as Tenant, dated June 20, 1990 (the "Sublease"); (g) lease dated the 20th day of April, 1979 by Lawrence Kadish, as Lessor, and Daniel J. DeMuth, as Lessee (the "Lease"); and (h) the Sublease].

[Plf.'s Aff. at ¶ 12, Ex. 6 at ¶ 2.]

Between January and September, 2003, the parties' counsel were in almost constant communication negotiating and revising the terms of the purchase agreement. [Braddock Dep. at pp. 8-10, 73.] On February 26, 2003, Plaintiff's counsel provided Plaintiff a draft of the purchase agreement in which he deleted Defendant's proposed changes as follows: subparagraph (f), which made reference to liens and other title defects caused by the sublease from Shoney's; subparagraph (g), which referenced the April 20, 1979 lease; and subparagraph (h). [Plf.'s Aff. at Ex. 7.] On September 8, 2003, Plaintiff signed a purchase agreement as revised by him and his counsel.[2]  [Plf.'s Aff. at ¶ 9, Ex. 4; Braddock Dep. at pp. 20-21, Ex. G.]  Specifically, the purchase agreement Plaintiff signed on September 8, contained the following terms:

> Seller's Title. LAWRENCE KADISH (Seller) agrees to sell the real estate and the property described above, if any, at the price and terms set forth herein, and to convey or cause to be conveyed to Purchaser title thereto by a recordable Special Warranty Deed, and subject only to: (a) covenants,

---

[2] Though it does not appear that Plaintiff ever sent this to Defendant, Plaintiff also sometime that day mistakenly signed a previous version of the purchase agreement, which contained the provisions proposed by Defendant.

> conditions and restrictions of record; and (b) private, public and utility easements and roads and highways, if any; (c) zoning regulations and ordinances of the city, town or village in which the Property lies; (d) any encroachments by adjoining properties on the Property; and (e) any encroachments by the Property on other properties, provided title company will insure said encroachments may remain.

[Plf.'s Aff. at ¶ 16, Ex. 4 at ¶ 2.]  On September 8, 2003, Plaintiff's attorney express mailed a letter containing Plaintiff's $16,000 earnest money and the executed purchase agreement.  [Plf.'s Aff. at ¶ 18, Exs. 4, 9.]

The following day at 8:20 a.m., Defendant's counsel faxed Plaintiff's counsel a copy of the purchase agreement as revised in January 2003.  [Plf.'s Aff. at ¶ 22, Ex. 13.]  Plaintiff insisted during negotiations from January 2003 forward that his purchase of the real estate must extinguish any sublease he might have with Shoney's.  [Plf.'s Aff. at ¶ 19, Ex. 1.]  Consequently, on September 11, 2003 Plaintiff's attorney wrote to Defendant's attorney:

> I have compared the black-lined copy of the agreement you faxed to me yesterday with the agreement I had Fed Ex'd to you on Monday.
>
> The only differences between the two documents are as follows:
>
> Paragraph 2:   Items (f), (g) and (h) have been deleted.
> These items make reference to the sublease made by Shoney's.  Mr. Knight by purchasing the property will be continuing his direct franchise agreement with Shoney's under his new corporate structure which he has discussed with Shoney's.  The April 20, 1979 lease is no longer applicable.  There will not be a sublease arrangement when Mr. Knight completes the purchase.

[Plf.'s Aff. at ¶ 21, Ex. 12.]  Defendant's counsel finally told Plaintiff's counsel, "Yes, we will remove that language from the contract that adds that lease."  [Braddock Dep. at p. 95.]  In the September 11 correspondence, Plaintiff's counsel told Defendant's counsel that the SBA loan approval would be conditioned upon the outcome of the title insurance commitment.  [Braddock Dep. at p. 111.]  By way of that same communication, Plaintiff's counsel further indicated, "My

5

client has SBA approval and the Bank is waiting on the signed Purchase Agreement to order a survey and a title policy. It is estimated that the transaction can be completed in 30-45 days depending on the survey and title policy." [Braddock Dep. at Ex. H.] The SBA loan was subject to clear title and the SBA requested a survey because the SBA was concerned about other commercial liens on the property. [Braddock Dep. at pp. 111-12.] On September 12, Defendant signed the final agreement, which did not contain subparagraphs (f), (g), and (h).

The resulting title insurance commitment came back showing a recorded memorandum of lease for the DeMuth Lease, which does not expire until 2014. [Braddock Dep. at pp. 19-24, 57, 106.] On November 12, 2003 and again on December 2, Michael T. Folks, Vice President and General Counsel of Captain D's, a subsidiary of Shoney's during the relevant time period, notified Plaintiff in writing that Captain D's owned a valid leasehold interest in the property at issue in this case. [Folks Aff. at ¶ 1.] Folks further indicated that Shoney's/Captain D's would not consent to any sale, transfer or assignment of the same, free and clear of Shoney's/Captain D's lease rights, without adequate consideration, which Captain D's calculated at the time to be $375,644. [Folks Aff. at ¶ 2.] On December 15, 2003, Plaintiff's counsel wrote to Defendant's counsel rescinding the purchase agreement and demanding the return of Plaintiff's earnest money.

**IV.    Discussion.**

The parties concur that Indiana contract law controls this dispute. In Indiana, a valid contract is formed where an offer is extended, accepted, consideration exchanged, and a manifestation of mutual assent exists. *Ind. Dept. of Correction v. Swanson Services Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005). "A meeting of the minds between the contracting parties

6

is essential to the formation of a contract." *Id*. For contract matters, the parties' "outward manifestation" of their subjective intent is key. *Zimmerman v. McColley,* 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (internal citation omitted). "A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. The intention of the parties to a contract is a factual matter to be determined from all the circumstances." *Id.*, (internal citation omitted). "Moreover, the parties' conduct during the course of a contract is relevant to the determination of their true intent." *Peterson v. First State Bank*, 737 N.E.2d 1226, 1229-30 (Ind. Ct. App. 2000).

Plaintiff contends that he is entitled to partial summary judgment for the recovery of his earnest money under alternative theories.[3] First, Plaintiff argues that no contract was formed due to a mutual mistake of fact. [Docket No. 68.] Even if an enforceable contract was formed, Plaintiff asserts that Defendant breached the contract by failing to convey marketable title. [*Id*.] Defendant conversely argues that the parties formed an enforceable contract and the undisputed facts entitle him to specific performance of the purchase agreement. [Docket No. 73.] Although the facts are largely undisputed, construing all inferences in favor of the party against whom the motion under consideration is made, the Court is not persuaded that either party is entitled to summary judgment in its favor as a matter of law.

As a threshold issue, the Court finds that the parties formed an enforceable contract when they executed the purchase agreement. Plaintiff, by his counsel, made an offer that as revised by

---

[3] Plaintiff fails to specifically delineate which Counts of his second amended complaint are encompassed by this motion. As best the Court can discern, Plaintiff's motion pertains to only Count I of Plaintiff's second amended complaint.

the parties was accepted by Defendant.  Consideration in the amount of $16,000 was exchanged.  Although Plaintiff contends that the requisite meeting of the minds was missing, the Court is otherwise persuaded.  Plaintiff's theory -- that a mutual mistake of fact thwarted contract formation because such mistake indicates a lack of mutual assent -- does not withstand closer legal scrutiny.  While it is true that a mutual mistake of fact may void an otherwise valid contract, a mistake of law will not.  *Alexander v. Dowell*, 669 N.E.2d 436, 441 (Ind. Ct. App. 1996).  Plaintiff's portrayal of a mutual mistake of fact hinges on the absence of clear title imposed by the recorded memorandum of the DeMuth lease.  Yet, "as a matter of law, the absence of clear title does not affect the validity of a purchase agreement."  *Id*.  Thus, Plaintiff has not presented a mutual mistake of fact sufficient to foil contract formation.

Moreover, information readily available to Plaintiff -- payment of sublease rent to Shoney's, existence of a recorded memorandum of lease, and Defendant's proposed contract terms -- placed Plaintiff on sufficient notice that "due inquiry" was called for before executing the agreement.  *See Indiana, B & W. Ry. Co. v. McBroom*, 15 N.E. 831, 832 (Ind. 1888) (Where there are facts known sufficient to put a person on notice that further inquiry is warranted, that individual cannot hold the purchase free from "prior claims or equities of which due inquiry" would have provided such information).  Given the information available to Plaintiff prior to and up to the time he executed the purchase agreement, Plaintiff cannot hide after the fact behind his own lack of diligence in determining the status of the relevant leaseholds on the property before he executed the agreement.  In this instance, the purchase agreement is a valid contract despite the lack of clear title.

Resolution of Plaintiff's alternative theory for partial summary judgment -- that

Defendant breached the agreement -- effectively forecloses Defendant's cross-motion for summary judgment seeking specific performance of the purchase agreement. This is so because "a party seeking specific performance of a real estate contract must prove that he has substantially performed his contract obligations or offered to do so." *Kesler v. Marshall*, 792 N.E.2d 893, 896 (Ind. Ct. App. 2003). Generally speaking, where "the purchaser is ordinarily entitled to a good title free from encumbrances, it is the duty of the vendor prior to the time of the conveyance to remove any existing encumbrances." *Alexander,* 669 N.E.2d at 441. Thus, if Defendant breached the agreement, or if a triable issue remains concerning breach of the agreement, Defendant is not entitled to specific performance.

Of assistance in resolving these motions, it is equally well settled that "where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment." *Roberts v. Agricredit Acceptance Corporation*, 764 N.E.2d 776, 779 (Ind. Ct. App. 2002) (also noting, "common sense dictates, and our system of jurisprudence requires the application of a principle, that parties engaged in the negotiation of a contract for the sale and purchase of property be obligated to protect their interest by reading the attendant documents before signing.") The undisputed facts reveal that after much negotiation the parties agreed that Defendant would "sell the real estate . . . and to convey, or cause to be conveyed to Purchaser, title thereto by a recordable Special Warranty Deed and subject only to: (a) covenants, conditions and restrictions of record . . . ." [Plf.'s Aff. at ¶ 16, Ex. 4 at ¶ 2.] Further, at least a memorandum of the DeMuth lease, which encumbered the property at issue, was publicly recorded. As a recorded instrument, the lease was arguably a "condition and restriction of record."

9

Plaintiff had ample opportunity to read and revise the purchase agreement language throughout a months-long negotiation period for this sale. At no time did Plaintiff object to or propose that subsection (a) be removed. The record makes no mention of Plaintiff's efforts to determine if any such "covenants, conditions and restrictions of record" existed. Common sense and judgment dictate that if Plaintiff had made such effort he may very well have discovered the recorded memorandum and further investigation may have uncovered the full nature of the leasehold on the property. On the other hand, Defendant made no effort to rectify the leasehold on the title. Instead, Defendant insists that the recorded memorandum of the lease is a sufficiently recorded condition or restriction. Again, under the factual record before the Court, the parties' ostrich-like approach to the existence and terms of the DeMuth lease does little to advance their efforts on summary judgment. Whether the recorded memorandum of lease was sufficiently a record of a covenant, condition or restriction is a factual determination best left for a jury to decide. The Court cannot resolve this genuine issue in favor of either party as a matter of law.[4] Consequently, the Court denies the parties' motions.

**V.    Conclusion.**

Construing all inferences in favor of the party against whom the motions under consideration here are made, the Court finds that neither party has demonstrated entitlement to summary judgment. While the undisputed facts establish that the parties formed an enforceable purchase agreement, the Court cannot conclude as a matter of law that Defendant breached that

---

[4] Moreover, Indiana law instructs that specific performance, as an equitable remedy, is not an appropriate remedy when an adequate remedy at law exists. *See Kesler*, 792 N.E.2d at 896-97 (court abused its discretion by ordering specific performance where conclusion that monetary damages would not fully compensate the seller was not factually supported).

agreement. Because a reasonable jury could very well determine that Defendant did breach the contract, Defendant likewise is not entitled to summary judgment on his claim of specific enforcement.

For these reasons, the Court denies Plaintiff's motion for partial summary judgment [Docket No. 68] and Defendant's motion for summary judgment [Docket No. 73]. This case is assigned for a **telephonic status conference on July 13, 2007 at 9:30 a.m.** The purpose of this conference is to discuss case management, address settlement, and set a trial date. The parties shall appear by counsel, who shall contact the Court at 317-229-3660.

Dated:   06/28/2007

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Stephen Michael Bernat
McCASLIN IMBUS & McCASLIN
smbernat@mimlaw.com

Robert W. Cinque
CINQUE & CINQUE PC
cinque845@aol.com

Ralph Edward Sipes
BUSBY AUSTIN COOPER & FARR
sipes@bacf.com